UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOM SIKIOTIS,<br>  *Plaintiff*,<br>  *v.*<br>VITESSE WORLDWIDE CHAUFEEURED<br>SERVICES, INC., & SHAHIN ABASPOUR<br>  *Defendants*. | Civil No. 3:15cv316 (JBA)<br><br>November 24, 2015 |

  Plaintiff Tom Sikiotis brings this action alleging willful and nonwillful[1] violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.*, by Defendants Vitesse Worldwide Chauffeured Services, Inc., ("Vitesse") and Shahin Abaspour arising out of Defendants' failure to pay Plaintiff overtime compensation at a rate of one-and-one-half times Plaintiff's regular pay for all hours worked over forty hours per week. (Am. Compl. [Doc. # 22] ¶ 12.) Defendants now move [Doc. # 26] to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted. For the following reasons, Defendants' motion is denied.

  **I.**  **Factual Allegations**

  The factual contentions in Mr. Sikiotis' Amended Complaint allege the following: Mr. Sikiotis was employed by Defendant Vitesse, a Connecticut corporation with a principal place of business in Stamford, Connecticut. (Am. Compl. ¶ 5.) Vitesse provides

---

[1] While Plaintiff's Amended Complaint only expressly alleges a willful violation of FLSA (*see* Am. Compl. ¶ 18), Plaintiff clarified during oral argument that his claim of willfulness presumptively includes a claim of a non-willful violation. The difference between the two implicates the statute of limitations: a willful violation of the FLSA has a three-year limitations period and a non-willful violation has only two years. *See* 29 U.S.C. § 255.

limousine services through its offices located across the country. (*Id.* ¶ 7.) Defendant Abaspour is the owner and President of Vitesse. (*Id.* ¶ 6.) Mr. Abaspour "had the authority to set the hours of employment, hire and fire, maintain employment records, [and] to direct the work and . . . determine the rate and method of payment of wages of Sikiotis." (*Id.*) "Abaspour's exercise of that authority was the direct cause of Vitesse's failure to pay wages."

Plaintiff was responsible for picking up and driving Defendants' customers to various locations in Connecticut, New York, and New Jersey. (*Id.* ¶ 8.) During job assignments, Plaintiff was required to wait and be on call, was not free to engage in personal activities, had to perform various non-driving tasks including ensuring the vehicle was cleaned and serviced, and was required to be in contact with Defendants at all times. (*Id.* ¶¶ 9, 11, 15.) As well, Plaintiff was required to be at pickup locations at least fifteen minutes before scheduled pickup times for each job assignment. (*Id.* ¶ 10.)

Plaintiff states that he customarily and regularly worked more than forty-hours per week but was not paid overtime compensation. (*Id.* ¶ 12.) To illustrate typical work weeks during the period of the claim, the Amended Complaint states that in the week ending February 24, 2013, Plaintiff had a total of 21 jobs and worked at least 52 hours; in the week ending March 3, 2013, Plaintiff had a total of 17 jobs and worked at least 42 hours; and in the week ending on March 10, 2013, Plaintiff had a total of 18 jobs and worked at least 45 hours. (*Id.* ¶ 13.)

Because Plaintiff received all of his job assignments through Defendants' dispatchers, Defendants "knew or should have known" that Plaintiff worked over forty hours per week, and a reasonable investigation by Defendants would have revealed that

2

limousine drivers were entitled to overtime pay because the SAFETEA-LY Technical Corrections Act of 2008 ("Corrections Act"), enacted June 6, 2008, removed limousine drivers like Plaintiff who crossed state lines from coverage of the Motor Carrier Exemption to FLSA. (Am. Compl. ¶¶ 16, 17). Nonetheless, Defendants took no steps to ensure their compliance with the widely-publicized Act and the FLSA.

## II.   Discussion[2]

### A.  Pleading Overtime Violations Under the FLSA

Under the FLSA, an employee bringing an action for unpaid overtime wages has the burden of proving that she performed work for which she was not properly compensated. *See Grochowski v. Phoenix Constr., Ypsilon Constr. Corp.*, 318 F.3d 80, 87 (2d Cir. 2003) *(quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). To succeed on a FLSA overtime claim, an employee must show that: (1) she was eligible for overtime (i.e., not exempt from the Act's overtime pay requirements); and (2) she actually worked overtime hours for which she was not compensated. *See* 29 U.S.C. § 207(a); *Hosking v. New World Mortgage, Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009). Defendants do not challenge Mr. Sikiotis' eligibility for overtime compensation. Rather, they maintain that he has failed to state a plausible overtime violation under the FLSA

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

because he has not adequately alleged that he worked compensable overtime hours for which he was not compensated.

Both parties rely on *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) and *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013), in which the Second Circuit addressed the degree of pleading specificity required for FLSA overtime claims. The *Lundy* plaintiffs, a respiratory therapist and two nurses, brought a class action alleging that the Catholic Health System of Long Island Inc., "failed to compensate them adequately for time worked during meal breaks, before and after scheduled shifts, and during required training sessions" in violation of various statutes including the FLSA. 711 F.3d at 109. Recognizing divergency within the Circuit and in sister circuits as to the level of factual detail necessary to state a plausible claim for overtime compensation under the FLSA, *Lundy* established a baseline: "We conclude that in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id.* (citing 29 U.S.C. § 207(a)(1)). While *Lundy* did not require the plaintiffs to plead an approximation of overtime hours, it affirmed the district court's determination that they had failed to state a plausible claim because they had "not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.* at 114.

In *Nakahata*, the Second Circuit determined that the "plaintiffs had failed to plead sufficient facts to make out a plausible claim that they worked uncompensated hours in excess of 40 in a given week," because all they alleged was that "they were not paid for overtime hours worked," including work performed during meal times, before and after

4

shifts, and during required trainings. 723 F.3d at 201. While this pleading raised a possibility of uncompensated time in violation of the FLSA, "[t]o plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* at 201.

Similarly, in *Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 89 (2d Cir. 2013), the Second Circuit affirmed the district court's determination that plaintiff had failed to state an overtime violation under the FLSA, because the plaintiff never "estimate[d] her hours in any or all weeks or provide[d] any other factual context of content." *Id.* at 89. Instead, she merely alleged that in "some or all weeks" she worked more than forty hours. *Id.* Citing with approval a First Circuit case that treated the phrase "regularly worked" as "too meager, vague, or conclusory" to survive a motion to dismiss, *id.* (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012)), the Second Circuit concluded that simply rehashing the statutory language of the FLSA was inadequate at the pleading stage, *Dejesus*, 726 F.3d at 90.

While the pleading standard established in *Lundy* and applied in these subsequent cases is clearly applicable, the factual pleadings here are materially distinguishable. First, the health care workers' claims in *Lundy et al* failed to adequately plead compensability. Under Section 4(a) of the Portal-to-Portal Act, which amended the FLSA, "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," and "activities which are preliminary to or postliminary to said principal activity or activities," are non-compensable. 29 U.S.C. § 254(a)(1). The plaintiffs in *Lundy et al* failed to allege how their

5

time between shifts, during meal breaks, or in the context of mandatory trainings was integral and indispensible to a principal activity such that it was compensable. *See Lundy*, 711 F.3d at 112 ("As to their FLSA overtime allegations . . . Plaintiffs were required to plead that they worked (1) compensable hours (2) in excess of 40 hours per week, and (3) that CHS knew that Plaintiffs were working overtime. Only some of the categories of purportedly unpaid work—meal breaks, time before and after scheduled shifts, and training—constituted 'compensable' hours"); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005) ("[W]e hold that any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § 4(a) of the Portal-to-Portal Act."); *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008) ("[W]hile employees need not be compensated for or on account of commuting to and from work, they must be compensated for any work performed during a commute that is integral and indispensible to a principal activity of their employment." (internal quotations omitted)).

Although Defendants contend that Mr. Sikiotis has failed to allege how the time he spent waiting and commuting between pickups is compensable (*see* Defs' Mem. Supp. at 10), under the FLSA, time spent traveling as part of an employee's typical work day is integral and indispensible and thus compensable, s*ee* 29 C.F.R § 785.38; *Lassen v. Hoyt Livery, Inc.*, No. 3:13-CV-01529 (VAB), 2015 WL 4656500, at *7 (D. Conn. Aug. 5, 2015) ("The principal activity of [defendants'] drivers, however, is to pick up passengers and transport them to their requested destinations. It is 'integral and indispensable' to that activity for a driver to drive to the location where the passenger awaits this service."). Likewise, waiting time is considered part of the principal activity of employment if the workers are "engaged to wait," as Plaintiff alleges, rather than "waiting to be engaged." 29

6

C.F.R. § 785.14.[3] Critical to this inquiry is whether the time spent waiting is primarily for the benefit of the employer or the employee, *see Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944), and Sikiotis maintains that between job assignments, he "was required to wait and be on call," do "non-driving tasks," was unable "to engage in personal activities," and had to show up fifteen minutes prior to a scheduled pickup (Am. Compl. ¶¶ 9, 10). Therefore, unlike the plaintiffs in *Lundy* and its progeny, he has sufficiently alleged compensable activities.[4]

Also, unlike the plaintiffs in *Lundy*, Mr. Sikiotis has alleged that he routinely worked longer than forty hours per week for which he was not properly compensated, offering a three-week snapshot as typical. *See Copper v. Cavalry Staffing, LLC*, No. 14-CV-3676 (FB) (CLP), 2015 WL 5658739, at *3 (E.D.N.Y. Sept. 25, 2015) (finding that plaintiffs had sufficiently alleged an overtime violation under the FLSA when they stated that defendants had "failed to pay [them] for the time they worked in excess of forty hours in

---

[3] "Whether waiting time is time worked under the Act depends upon the particular circumstances. The determination involves "scrutiny and construction of the agreements between particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the circumstances. Facts may show that the employee was engaged to wait or they may show that he waited to be engaged." Such questions "must be determined in accordance with common sense and the general concept of work or employment." 29 C.F.R. § 785.14 (internal citations omitted).

[4] Defendants conceded at oral argument that the fifteen minutes of waiting time Mr. Sikiotis was required to spend prior to scheduled pickups was compensable. There appears to be a factual dispute, however, as to whether Mr. Sikiotis was compensated for this time; Defendants claimed during oral argument that he was paid on a commission-rate basis that included these fifteen minute pickup intervals. Plaintiff disputes this. At the motion to dismiss stage, however, the Court must take Plaintiff's allegations in his Amended Complaint as true and draw all reasonable inferences in his favor.

any given week," because they corroborated their claims by providing two workweeks as representative examples). In contrast, the allegations in *Lundy* failed because of "arithmetic," which did not show time exceeding forty hours per week. *See Dejesus*, 726 F.3d at 89 (analyzing the arithmetical problems in *Lundy*); *see also Lundy*, 711 F.3d at 114 ("Reviewing Plaintiffs' allegations, as the district court thoroughly did, we find no plausible claim that FLSA was violated, because Plaintiffs have not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours."). Therefore, under the standards established in *Lundy* and its progeny, Mr. Sikiotis has made out a plausible overtime claim under the FLSA.

### B. Shahin Abaspour's Status as an Employer Under the FLSA

Defendants do not dispute that Vitesse was Mr. Sikiotis' "employer" as that term is defined under the FLSA but contend that Plaintiff has inadequately pled circumstances for Mr. Abaspour's individual liability under the Act. For the following reasons, the Court disagrees.

To be held liable under the FLSA, a person must be an "employer," defined broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). When determining whether an individual or entity is an "employer" under the FLSA, courts evaluate the "economic reality" of the relationship by focusing on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citing *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465,

1470 (9th Cir. 1983)). No one of the four factors standing alone is dispositive. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Additionally, a district court is "free to consider any other factors it deems relevant to its assessment of the economic realities" of the employer-employee relationship. *Copantitla v. Fiskardo Estiatorio*, Inc., 788 F. Supp. 2d 253, 309 (S.D.N.Y. 2011); *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (stating that whether an employer-employee relationship exists does not depend on isolated factors but rather "upon the circumstances of the whole activity").

Moreover, "[w]here a plaintiff-employee is employed by a corporation, individual officers or directors of the corporation may be 'deemed employers [under the FLSA] where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions.'" *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 246 (W.D.N.Y. 2009) (citing *Jiao v. Shi Ya Chen*, No. 03 CIV. 0165 (DF), 2007 WL 4944767, at *10 (S.D.N.Y. Mar. 30, 2007)). Such status, however, "does not require continuous monitoring of employees, looking over [one's] shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." *Herman,* 172 F.3d at 139.

The pleading requirements for stating a claim of a company's owner and president's personal liability for overtime violations under the FLSA have not yet been addressed in this Circuit. However, in *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013), in the context of a motion for summary judgment, the court examined the issue of

9

when "an individual within a company that undisputedly employs a worker is personally liable for damages as that worker's 'employer'" under the FLSA.

> The court stated that the following "two legal questions" ground the analysis:
>
> The first concerns the scope of an individual's authority or "operational control" over a company—at what level of a corporate hierarchy, and in what relationship with plaintiff employees, must an individual possess power in order to be covered by the FLSA? The second inquiry, related but distinct, concerns hypothetical versus actual power: to what extent and with what frequency must an individual actually use the power he or she possesses over employees to be considered an employer?

*Id.* at 106. Recognizing "that a company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA "employer," *id.* at 107, the court stressed "that "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees," *id.* at 111.  Thus, in order to properly plead an individual's overtime violation under the FLSA, a plaintiff must provide adequate factual allegations demonstrating actual operational control and the exercise of this control that permit the court to draw plausible and reasonable inferences that a defendant had the requisite involvement with the employees.

Defendants claim that Plaintiff's assertion that Mr. Abaspour was Plaintiff's "employer" fails because Plaintiff has failed to provide anything beyond a verbatim recitation of the economic realities test. (Defs' Mem. Supp. at 13.) The Amended Complaint language Defendants assert is inadequate is:

> Defendant, Shahin Abaspour, is the owner and President of Vitesse. At all times relevant to his Complaint, Abaspour had the authority to set the hours of employment, hire and fire, maintain employment records, to

>direct the work and to determine the rate and method of payment of wages of Sikiotis. Abaspour's exercise of that authority was the direct cause of Vitesse's failure to pay wages as set forth below. Accordingly, Abaspour was the employer of Sikiotis, as that terms is defined in the FLSA.

(Am. Compl. ¶ 6.) While Defendants are correct that Plaintiff's only allegation in his Amended Complaint with respect to Mr. Abaspour specifically—and not Defendants collectively—mirrors the economic realities test, Mr. Sikiotis does not just assert that Mr. Abaspour had the authority to carry out these tasks; he also alleges that he exercised this authority. Mr. Sikiotis further alleges that collectively Defendants required him to adhere to the various conditions discussed above. Plaintiff's allegations are indeed thin, but they nonetheless extend beyond threadbare, boilerplate language. *See Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) ("[m]ere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details—essentially 'a formulaic recitation of the elements of a cause of action'—are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA"). To what extent and with what frequency Mr. Abaspour exercised his authority requires a more developed factual record. Accordingly, the Court finds that Mr. Sikiotis has sufficiently pled a plausible FLSA overtime claim against Mr. Abaspour in his personal capacity.

### C. Pleading Willful Overtime Violations Under the FLSA

Defendants' final argument is that Mr. Sikiotis has failed to state a claim for willful violations of the FLSA. The Court disagrees.

In order to state a claim for a willful violation of the FLSA, the complaint must allege more than an ordinary violation. *See Gorey v. Manheim Servs. Corp.*, 788 F. Supp. 2d 200, 209 (S.D.N.Y. 2011). "A 'willful' violation means that 'the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Marshall v. UBS Fin. Servs., Inc.*, No. 14 CV. 4384 (JGK), 2015 WL 4095232, at *4 (S.D.N.Y. July 7, 2015) (quoting *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1008 (2d Cir. 1991) (internal quotation marks omitted)). When proving "willfulness," therefore, a plaintiff must show more than that defendant "'should have known' it was violating the law. 'Should have known' implies a negligence or 'reasonable person' standard. Reckless disregard, in contrast, involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 627 (S.D.N.Y. 2014) (citing *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 937–38 (S.D.N.Y.2013)); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 614 (1993) (recognizing that a finding of willfulness under the FLSA requires a showing of "knowledge or reckless disregard"); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (stating in the context of the FLSA that "[t]he word 'willful' . . . is generally understood to refer to conduct that is not merely negligent"). Notably, courts have held that "whether or not a violation of the FLSA is 'willful' is a fact-intensive inquiry not appropriately resolved on a motion to dismiss." *See, e.g., Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 381 (S.D.N.Y. 2012).

With respect to Plaintiff's claim that Defendant "willfully" violated the FLSA, Plaintiff alleges facts which, when taken as true, support Plaintiff's contention that Defendants knew they were violating the FLSA. For example, Plaintiff claims that

Defendants knew their pay practices for limousine drivers did not comply with the Corrections Act, which effectively modified the FLSA's motor carrier exemption[5] by affirming that Act's overtime provisions applied to employees of motor carriers who drove on public highways in interstate commerce vehicles that were 10,000 pounds or less. *See* Pub. L. No. 110–244, § 306(a) & (c), 122 Stat. 1620 (2008). Plaintiff states that this Act was "widely publicized" within the transportation industry but that Defendants took no steps to comply with it (*see* Am. Compl. ¶ 16), and had Defendants conducted a reasonable investigation of their pay practices, they would have known their drivers were entitled to overtime pay (*id.* ¶ 17). Moreover, Plaintiff alleges Defendants knew which drivers worked over 40 hours per week because the drivers received all their assignments from Defendants' dispatchers.

These allegations shift the merely possible into the plausible sphere, implying that Defendants knew or recklessly disregarded their duties under the FLSA even if Plaintiff neglected to use the phrase "reckless disregard." Thus, Plaintiff's allegations, when taken as true, state a plausible claim regarding Defendants' willful violations of the FLSA.

---

[5] Under the FLSA, employees engaged in interstate commerce must be paid "at a rate not less than one and one-half times the [employee's] regular rate" of pay for any work in excess of forty hours in any workweek. 29 U.S.C. § 207(a). However, Congress exempted several types of employees from the FLSA's protections. *See* 29 U.S.C. § 213. One such exemption pertains to motor carriers and provides that FLSA's overtime provision "shall not apply . . . to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. §] 31502." 29 U.S.C. § 213(b)(1). "The purpose of this exemption is to prevent conflict between the FLSA and the Motor Carrier Act." *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 271 (S.D.N.Y. 2008).

### III. Conclusion

For the reasons stated above, the Court denies Defendants' Motion [Doc. # 26] to Dismiss.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of November 2015.